ZAGER, Justice
(dissenting).
I join the well-reasoned dissent by Justice Hecht. I agree that the unique facts of this case do not lend themselves to a determination by means of summary judgment. Rather, I believe there are sufficient factual issues involved in this case for the State to have assumed a general, and perhaps a special, duty of care to the plaintiff.
It is important to look at the factual scenario that played out in this case and compare it to the legislative mandates. Cubbage was sentenced to several terms of imprisonment. Rather than release Cub-bage from State custody following his latest prison sentence, the State elected to commence civil commitment proceedings to have Cubbage adjudicated a sexually violent predator. See Iowa Code § 229A.4 (2011). This was based on his lifetime of sexual offenses, many of them against children. As noted, Cubbage was clearly one of a “small but extremely dangerous group” of persons whose “likelihood of engaging in repeat acts of predatory sexual violence is high.” Id. § 229A.1.
Several legislative findings are also significant when discussing the sexually violent predator (SVP) statutes. First, SVPs are not meant to be treated under Iowa Code chapter 229. Compare id. §§ 229.1A, .6, with id. § 229A.1 (“In contrast to persons appropriate for civil commitment under chapter 229, sexually violent predators generally have antisocial personality features that are unamenable to existing mental illness treatment.”). Chapter 229 is intended to provide treatment to persons with serious mental disorders and then return them to the community. Id. § 229.15 (outlining procedure for periodic reports of individuals hospitalized under chapter 229). Second,
[t]he general assembly finds that sexually violent predators’ likelihood of engaging in repeat acts of predatory sexual violence is high and that the involuntary commitment procedure under chapter 229 is inadequate to address the risk these sexually violent predators pose to society.
Id. § 229A.1. Last, there are several other references in the legislative findings of the SVP statute regarding “public safety concerns” and “the need to protect the public.” Id.
However, adjudicating an individual as an SVP under our statutes is not quick or easy, nor should it be. At the beginning of the proceedings, Cubbage received the right to appointed counsel and the right to retain experts. Id. § 229A.6(l)-(2). The Iowa Rules of Evidence applied to the hearing, as well as the Iowa Rules of Civil Procedure. Id. § 229A.7(4). Cubbage was entitled to a full trial to either a judge or a jury. Id. The State had the burden of proving beyond a reasonable doubt that *601 Cubbage was an SVP. Id. § 229A.7(5). The State felt compelled to bring this action and was successful in meeting its burden. Cubbage was “committed to the custody of the director of the department of human services for control, care, and treatment until such time as [his] mental abnormality has so changed that [he] is safe to be placed in a transitional release program or discharged.” Id § 229A.7(5)(&). Cubbage was civilly committed to the Civil Commitment Unit for Sex Offenders (CCUSO) in May 2002.
To say that Cubbage’s progress in treatment at CCUSO as a violent sexual predator was abysmal is an understatement. It is only necessary to refer to the most recent annual report for Cubbage prior to his discharge, dated July 13, 2010, to confirm these facts. Cubbage chose not to be interviewed for the annual evaluation. Cubbage had not actively participated in treatment programming since 2005. Cub-bage did not meet the criteria for the transitional release program as (1) there was no change in his mental abnormality, and (2) he did not meet five of the ten statutory criteria for transitional release. See id § 229A.8A(2)-(3). The psychologist’s evaluation was that Cubbage “continues to display dynamic risk factors- that result in him being likely to engage in predatory acts constituting sexually violent offenses if discharged.” The most recent annual report disclosed- that on June 10, 2010, and again on June 29, Cubbage received behavioral incident reports for disrespect and sexual behavior, with the second incident classified as a “major incident report.” However, because of a diagnosis of early-onset Alzheimer’s, and a vague reference to a lack of executive cognitive ability, the State deemed Cubbage appropriate for unconditional discharge from CCUSO to the Pomeroy Care Center. See id. § 229A.10 (outlining the procedure for a petition for discharge from secure confinement).
With this history in mind, I agree with and endorse Justice Hecht’s duty analysis and would find, at a minimum, that a special relationship existed between the State and Cubbage to support the imposition of a duty to warn Gottschalk. It is unnecessary for me to repeat this duty analysis here. Suffice that I would also reject the no-duty rule applied by the district court.
What prompts me to write separately is the summary and perfunctory fashion in which the State orchestrated the discharge of an obviously dangerous sexual predator from CCUSO and then facilitated his placement in a nursing home among a highly vulnerable population. This is troubling to me on many levels, both legally and factually. The State of Iowa has. been responsible for the care, custody, and control of Cubbage for decades, either in the prison system or based on his commitment as an SVP. The State expended great time and expense to civilly commit Cubbage and thereafter to keep him confined. The need for this commitment clearly continued up to the date of his unconditional discharge from CCUSO. This commitment was to continue until “[his] mental abnormality has -so changed that [he] is safe to be placed in the transitional release program or discharged.” Id. § 229A.7(5). As reflected in his records and evaluations, Cub-bage’s mental abnormality had not changed prior to the time of his unconditional discharge. Likewise, the latest psychological evaluation of Cubbage resulted in an opinion that Cubbage “continues to display dynamic risk factors that result in him being likely to engage in predatory acts constituting sexually violent offenses if discharged.” This conclusion is clearly supported by the two very recent incidents of sexual behavior. Under what possible circumstances would the State ever consid *602 er recommending that Cubbage was suitable for unconditional discharge?
The answer is that in May 2010, discussions began about how the State could remove Cubbage from his commitment at CCUSO “pending DHS Director’s approval.” Then, perhaps not surprisingly, the July 2010 annual report concluded that Cubbage “does not currently meet the definition of a sexually violent predator as described in 229A.” Based on all the information described above, this conclusion lacks any credibility in law or fact. But by this time, the decision had apparently been made to find another placement for Cub-bage; the only question was how the State would accomplish this goal.
Anyone who is familiar with the SVP statutes and our accompanying caselaw can appreciate just how difficult it is for an individual to either transition from CCU-SO or be discharged. Any decision for either transition or discharge should be well-informed and meet the strict standards as provided in the statute. See id. §§ 229A.8A, ,9A, .10. In other words, the discharge of a sexually violent predator should be tested by the law and the facts, and not as a mere accommodation to the State which simply no longer wants to incur the time, expense, or inconvenience that is involved with the care, custody, and control of this SVP. Of utmost importance, any decision involving the unconditional discharge of an SVP must involve an analysis of the effect of the decision on public safety. No critical analysis or testing was even attempted here. Instead, the motion for discharge was presented to the district court as a stipulated proposed disposition. There was no record, no evidence, and no discussion. What is also important to note is that there are a number of alternatives provided for in the statute that do not involve the unconditional discharge of a civilly committed SVP. See id. §§ 229A.8A, .9A. Instead of even considering these alternatives, or advising the district court of these various placements, the State simply recommended an unconditional discharge of Cubbage. Then to compound matters, the State agreed to a long-term mental health commitment for Cubbage, a placement which is clearly inappropriate for a person with Cubbage’s background.
With this procedural background, the State now argues it is insulated from any duty it might have had, and any corresponding liability, because it no longer has care, custody, and control over Cubbage. It also relies on the argument that a district court judge approved the order of discharge for Cubbage and a different district court judge approved the mental health commitment order for Cubbage. I cannot agree that the fact that the orders were approved by a district court judge somehow allows the State to avoid the duty to act reasonably to protect the vulnerable nursing home residents who would be exposed to Cubbage as a consequence of the discharge and transfer arrangement. The State had the care, custody, and control over Cubbage for decades. When it no longer wanted this responsibility, regardless of the obvious risks it posed to public safety, it attempted to use the court system to absolve itself of all further responsibility and liability. This is unconscionable. Unfortunately, this is not the only context in which the State attempts to insulate itself from liability when it decides that it no longer wants to provide for the care, custody, and control over individuals it has historically assumed responsibility for, and to whom it now decides it no longer wants this obligation. Our court system has been used in similar situations involving our mentally ill citizens and our mental health institutes. While it is clearly within the State’s prerogative to take such actions as it deems appropriate, it should also understand that there is a concomitant duty of *603 reasonable care under our tort law. Likewise, I think it is incumbent upon our judicial officers to more closely examine scenarios like the facts and circumstances presented here. I would reverse the district court grant of summary judgment to the State and remand for further proceedings.
Hecht, J., joins this dissent.